Mr. Gannon, when you're ready. And help me, which claim are we talking about for this case? Which patent? So this is, it's really all of the, this argument relates to all the patents. Okay. It's the constitutional law issue. Oh, you want to raise the constitutional issue? Yes. Okay, that's fine. Yeah, so. Ms. Allen, you get to talk. Can I ask you, since you're going to raise it, let me ask you. You've suggested that there's a takings problem and a due process problem. Can you explain what your takings theory is to the extent that you can assert it in the context of a CBM review? I think that the takings clause, it's just as simply you're taking a property. That's as simple as that. Well, sure, but this is the problem with your constitutional arguments, even in your expanded, more detailed discussion in your briefs. You don't actually play that out. I mean, it's not that a taking is unconstitutional. The takings clause actually permits Congress or the United States to take property with just compensation. So how would your theory of a takings clause violation apply here in the context of a CBM review at all? Well, because the same exact thing is happening, Your Honor. You've got— No, no, but explain it to me. There's a test for takings clauses. There's two different kinds of takings, or maybe even more, and you get a certain type of relief. What relief do you think you can get from the PTAB for a takings violation? Well, that's the problem. We can't get any relief from the PTAB. Well, then why are you asserting a takings clause here? Because— Do you know where the takings clause relief should go? I'm sorry. I don't understand that. Well, I don't understand what you're talking about because a takings clause against the United States means that you're arguing the United States is taking your property without just compensation. Right. And you're asking for that compensation. You can't do that in a PTAB case, right? You can't ask the PTAB to order the government to pay you money. That's right. You go to the Court of Federal Claims for that. Well, Your Honor— Well, I mean, can you give me one single case with a legal theory that has shown a takings clause is a defense to an agency action, rather than the theory I just described, which is where almost every other takings clause case against the United States goes? I can't give you a case off the top of my head. I mean, your repeated reference of this takings clause theory in multiple briefs without any explanation, without any citation to legal authority that would allow it to be applied in a PTAB case, comes very, very close to being frivolous as briefed and frivolous as argued. I'm just going to warn you. I don't think I want—you need to be asserting that very many more times here. Now, your due process claim may have some more legitimate arguments, although, again, I don't know what your theory is because you don't cite any kind of test. You don't explain how that test is applied to this legislation at issue or the like. So you have some time here. Why don't you try to explain it to me? Well, Your Honor, with respect to due process, again, our patents, TT's patents, we already had a trial on these patents before the AIA was even enacted. The AIA was enacted. It was applied retroactively to our patents. For the first time ever, the government could assert or the opposing counsel could assert a one-on-one argument with the lower standard of proof that changed the quid pro quo of the system, and that is violating the takings and due process clauses, we believe. Well, we've already established that you can't assert a takings clause, or at least to my satisfaction, that it's not a defense to an agency action. How does Congress's retroapplication and creation of the CBM review or creation of the CBM review and retroactive application to your process or patents violate due process? Well, because for the first time now, in a patent office proceeding, for example, the other side can argue that the patents are abstract, for example, under a lower standard. Why is that a violation of due process? Because we never had notice of that. Again, what is the test for a due process violation involving retroactive application of law? It's not always unconstitutional, right? It's not per se unconstitutional for Congress to enact a law with retroactive effects. There's a test for it. Do you know what the test is? I believe I do know the test for due process. I mean, it's not in your briefs. Can you articulate it for me and tell me how it applies in this case? Well, in the PTAB proceeding, again, it's a completely different proceeding than this report. Can you start with what the test is? What's the test? I mean, again, you agree that Congress has been permitted over the years to enact legislation that has retroactive application without violating the due process clause, right? Not every retroactive application is unconstitutional. What's the test to determine whether it falls into that constitutional line or unconstitutional line? Well, Your Honor, I can't cite a case to you right now. Again, I mean, you're really pushing the boundaries by repeatedly referencing in very shorthand fashion these arguments without giving us any explanation whatsoever to how they apply here. And, you know, you're getting them rejected out of hand in the last two trading technology cases for not effectively preserving them. But, you know, it becomes a problem at a certain point when you just throw something out there and you suggest that we have to decide this issue without giving us any explanation of what your argument is. Well, Your Honor, with all due respect, on the earlier cases, the court just found that we, the only problem they had was that we waived the argument, even though in those earlier cases we did have an argument in our blue brief. The Federal Circuit allowed the government to file an additional brief, and then the Federal Circuit allowed us to file a 30- or 40-page brief in response. Sure, but you don't preserve arguments by putting a one- or two-paragraph placeholder in and saying, oh, we have this possible argument, and then forcing the government or the other side to respond fulsomely, and then you getting a 30-page reply brief. And you may have put four paragraphs in this time instead of two, but you still haven't been able to articulate a sufficiently detailed legal theory, and you haven't done it today at argument. Well, Your Honor, if you would like us to submit... No, I would like you to quit putting in two-paragraph placeholders or four-paragraph placeholders, and then when we ask you to distinguish prior cases, claiming in a supplemental letter that those are detailed discussions. I mean, you wrote that letter, right, that said you had a detailed discussion of constitutional law in your brief? If you ask a first-year associate to give you a detailed memo on this issue, do you think four paragraphs would cut it? Your Honor, I think it depends. It depends on what the issues are. Well, don't you think it would at least require a description of the test and how it applied to the case at hand? Can you point to me in your brief, in any of your blueprints here, where you actually describe the test and how it applied to the cases at hand? Well, as I said, Your Honor, we'd be happy to provide that to the court. No, thanks. Do you want to talk about the merits, or have we basically discussed all those same issues with regards to... Unless you have any questions on the merits. Thanks. Ms. Nelson, since he's not talking about the merits, unless you really want to talk, I think we're good. Ms. Allen, do you want to briefly address the constitutional issues? Sorry. Can you first address the takings clause? Are you aware of any kind of case where the takings clause is used as a defense to an agency action? Your Honor, we didn't make that argument because in Horn v. Department of Agriculture, the Supreme Court allowed under that statutory scheme for a takings argument to be used as a defense to an agency action. But how would that play out then? Would it make the agency action unlawful, or would it just mean that they could seek compensation for it? Ultimately, it would just mean that they could seek compensation, but because the Supreme Court allowed it in that case, we didn't run that argument here. What are the facts? Did that case go through district court at some point, or was it pure review from an agency action? I'm just curious. I'm not ruling it out, but your friend on the other side can't come up with any argument why it can be asserted in a PTAB case. Can you think of how it would be asserted in a PTAB case? I certainly don't want to be making the argument for him, and we haven't briefed Horn, but to my mind, that's the closest case, and I apologize that I don't have the exact facts. And what happened in Horn then? Did they find the agency action unconstitutional? I'm not sure what the merits determination was, Your Honor, but it was a question about taking raisins, and as a defense in the agency proceeding under the particular statute that was at issue there, the takings argument was allowed to be raised. Here, as we've discussed in our forfeiture argument, I think if they had raised this argument before the agency, the agency has discretion to decline to institute CBM review, so if the agency had agreed with them, it could have declined to institute the review. But again, we think the takings argument also fails on the merits, and just to briefly address the due process issue, the question is whether Congress had a rational basis, and we think that the rational basis this court found in Patlex applies fully here, and that decision controls this case. Okay. Thank you. Thanks. Mr. Gannon, do you have anything on rebuttal? No, Your Honor. Thanks. The case is to be submitted. We're recessed.